* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with minor modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage is $270.00 per week.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 55 years old. Plaintiff graduated from high school and has taken early childhood education courses at Catawba College.
2. Plaintiff has worked as a sock-pairer for approximately 41 years. From May 2000 through February 12, 2004, plaintiff worked as a sock-pairer for defendant-employer. Sock-pairing, which plaintiff performed ninety-five percent of the time, required constant use of the hands to manipulate 400 to 600 dozen pairs of socks during an eight-hour shift. As plaintiff testified at the hearing before the Deputy Commissioner, to properly perform her duties, she used repetitive motions with her thumbs and hands to pinch the socks together and flip them to the other side. Plaintiff frequently used clippers to remove loose strings from the socks.
3. At the hearing before the Deputy Commissioner, the parties stipulated into evidence a letter from defendant-employer to the North Carolina Industrial Commission. This letter explained in detail plaintiff's job duties:
 She [plaintiff] then takes a stack of socks from the board and lays them in front of her with the toe and top facing away from her with the heel in front of her. She then takes her fingers and grabs the top and toe of the sock and flips it over to where it is laying on the opposite side with toe and top facing the pairer and the heel away from her. She then repeats the process while looking for holes and seconds which she throws out. During the process she matches one sock with another from top to heel to toe, thus making a pair. Once she has six pair she then lays them onto another board which she placed on a table beside of her. . . . Production workers made their money according to their speed and constantly working at their job.
4. At the hearing before the Deputy Commissioner, Jenelia Whitener Lefevers, who had worked for defendant-employer for approximately ten years and was in charge of defendant-employer's office since approximately 2003, testified regarding the work duties of plaintiff. Ms. Lefevers testified that the sock pairing and sock cuffing duties were highly repetitive. She also testified that in her opinion, the constant motion involved in plaintiff's duties would aggravate carpal tunnel syndrome.
5. According to Ms. Lefevers, plaintiff and another employee, Ms. Debra Bacca, had complained about hand pain while cuffing socks. Ms. Lefevers testified that, if requested, employees were given hand braces to wear as protection and she was aware of three employees who wore them. Ms. Lefevers testified that she knew plaintiff had had prior carpal tunnel surgery and frequently wore a wrist brace to limit wrist motion.
6. During the remaining five percent of the time of plaintiff's job with defendant-employer, plaintiff performed work as a cuffer. In this position, plaintiff cuffed about 200 dozen pairs of socks per eight-hour shift, which required repetitive movement with the thumbs and index fingers. The amount of cuff on each sock depended on the customer's requests.
7. Due to the pain in her thumbs, plaintiff sought treatment with an orthopedic surgeon, Dr. John L. dePerczel, on January 6, 2004. Dr. dePerczel noted there was an obvious deformity of the thumbs. Plaintiff testified that as of her visit with Dr. dePerczel on January 6, 2004, she felt that her problems with her hands were work-related. Dr. dePerczel's diagnosis was severe osteoarthritis of the thumbs and he recommended an interphalangeal fusion (IP fusion) to correct this condition. Dr. dePerczel performed right thumb IP fusion surgery on February 13, 2004. Within a few weeks of plaintiff's surgery, in late February 2004, the plant closed permanently.
8. On August 17, 2004, plaintiff again presented to Dr. dePerczel with complaints of severe pain over the wrist with numbness and tingling. It was noted that plaintiff underwent right carpal tunnel release surgery years prior. Dr. dePerczel recommended nerve conduction velocity studies for both arms, which revealed positive Tinel's and carpal tunnel on the left. Plaintiff underwent left carpal tunnel release surgery on April 7, 2005.
9. During her treatment for her carpal tunnel syndrome condition, plaintiff also expressed concerns regarding her left thumb deformity. On May 19, 2005, plaintiff underwent a left thumb IP fusion. Dr. DePerczel last examined plaintiff on August 2, 2005. Dr. DePerczel noted plaintiff had not reached maximum medical improvement for the left thumb. Written work restrictions were not provided in light of the fact that the plant was closed and plaintiff did not have a job. Dr. dePerczel indicated that plaintiff would have been restricted to using one hand if she could have returned to the plant following the left thumb surgery.
10. As her testimony at the hearing before the Deputy Commissioner revealed, plaintiff advised her supervisor, Alice Houston, on numerous occasions that her hands were causing her problems as a result of her work. Plaintiff initially sought medical treatment on January 6, 2004, for her symptoms and informed her supervisor of the same. Despite the pain in her hands, plaintiff continued to work until her first IP fusion surgery on February 13, 2004. Shortly thereafter, the plant closed for business. Plaintiff was not diagnosed with carpal tunnel syndrome until after the plant was closed.
11. At the hearing before the Deputy Commissioner, when questioned as to why she waited until June 2004 to file notice of her claim when as of January 6, 2004, she felt that her condition was work-related; plaintiff testified that she was waiting to see if the February 2004 surgery helped her condition.
12. Defendants have alleged that plaintiff failed to make them aware that any of her hand problems were work-related until June 2004, when plaintiff filed notice of her claim, and that this delay was contrary to company policy and made claim-processing burdensome.
13. The Full Commission finds that plaintiff's testimony regarding the reason for any delay in reporting her work-related condition is credible and therefore establishes reasonable excuse as to why plaintiff filed notice of her claim in June 2004. The Full Commission further finds that defendants had notice of her thumb condition on or about January 6, 2004, and that it was likely work-related. Although defendants have alleged that plaintiff's actions were against company policy and placed an extra burden on defendants regarding claim processing, the Full Commission finds that defendants have failed to show they were prejudiced in the provision of compensation or claim investigation.
14. In his deposition testimony, Dr. dePerczel opined, and the Full Commission finds, that the sock-pairer job caused plaintiff's bilateral thumb condition and that persons who perform the sock-pairing job have a greater risk of developing the condition than persons not generally exposed.
15. With regard to plaintiff's bilateral carpal tunnel syndrome, Dr. dePerczel testified that the repetitive nature of plaintiff's job as a sock-pairer caused or significantly aggravated her condition of right carpal tunnel syndrome. Dr. dePerczel also opined that persons in the sock-pairer position have a greater risk of developing carpal tunnel syndrome than members of the general public not similarly exposed. Further, Dr. dePerczel considered the other causes of carpal tunnel syndrome such as having diabetes, thyroid disease, or smoking and discounted them as possibilities in plaintiff's case. The Full Commission finds Dr. dePerczel's expert medical opinion on causation and increased risk are credible with regard to plaintiff's right carpal tunnel syndrome.
16. Although initially Dr. dePerczel testified that the carpal tunnel syndrome in both of plaintiff's hands was caused or significantly aggravated by the repetitive nature of her employment, he later clarified his opinion. Based on her previous right carpal tunnel diagnosis while working as a sock-pairer and the fact that she did not have any of the other factors for carpal tunnel syndrome, Dr. dePerczel is certain that her right carpal tunnel syndrome was aggravated by the sock-pairer job. However, Dr. dePerczel responded to further questioning about the left carpal syndrome that ". . . I'm not sure whether employment had much to do with her left hand involvement." Dr. dePerczel did not have a strong opinion about the causation of plaintiff's left carpal tunnel syndrome due to the fact that plaintiff did not seek medical treatment for the left hand while she was working.
17. Based on the greater weight of evidence, the Full Commission finds that plaintiff developed the occupational diseases, bilateral thumb osteoarthritis and right carpal tunnel syndrome, as a result of her employment with defendant-employer, and that her employment with defendant-employer placed her at an increased risk for acquiring and developing bilateral thumb osteoarthritis and right carpal tunnel syndrome as compared to members of the general public.
18. However, the Full Commission also finds that plaintiff has failed to establish by competent medical evidence that her left carpal tunnel syndrome was caused or significantly aggravated by her employment with defendant-employer.
19. Finally, the Full Commission finds that plaintiff has engaged in reasonable job searches with the assistance of the North Carolina Employment Security Commission. She attempted to retrain as a teacher's assistant by taking courses from August 2004 through December 2004 at Catawba Community College. Plaintiff was unable to complete the teacher's assistant program due to problems with her hands caused by the required typing and writing. The greater weight of the evidence in this matter establishes and the Full Commission finds that plaintiff has not returned to work in any capacity since February 12, 2005, primarily due to her condition of bilateral thumb ostheoarthritis and right carpal tunnel syndrome.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of bilateral thumb osteoarthritis and right carpal tunnel syndrome as a direct result of her employment with defendant-employer. Her position and the job duties associated therewith placed her at an increased risk of developing bilateral thumb osteoarthritis and right carpal tunnel syndrome when compared to the general public not so employed. Plaintiff's position and job duties also significantly contributed to her development of bilateral thumb osteoarthritis and right carpal tunnel syndrome. N.C. Gen. Stat. § 97-53(13).
2. As a result of her contraction of her bilateral thumb osteoarthritis and right carpal tunnel syndrome, plaintiff is entitled to temporary total disability at the compensation rate of $180.01 per week beginning February 12, 2004, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. As a result of her bilateral thumb osteoarthritis and right carpal tunnel syndrome, plaintiff has received medical treatment and is entitled to receive further medical treatment that would effect a cure, give relief or lessen her period of disability, subject to N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
4. Plaintiff has failed to establish that her left carpal tunnel syndrome condition was caused or significantly aggravated by her employment with defendant-employer. N.C. Gen. Stat. §97-53(13).
5. Defendants were not prejudiced by plaintiff's failure to provide written notice of her bilateral thumb osteoarthritis and right carpal tunnel syndrome within 30 days. N.C. Gen. Stat. §97-22.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved herein, defendants shall pay to plaintiff temporary total disability compensation at the rate of $180.01 per week beginning February 12, 2004, and continuing until further Order of the Commission.
2. Defendants shall pay all medical expenses incurred and to be incurred as a result of plaintiff's contraction of bilateral thumb osteoarthritis and right carpal tunnel syndrome when bills for the same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of the accrued compensation due plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to plaintiff's counsel; thereafter, every fourth check shall be paid to plaintiff's counsel.
4. Plaintiff's claim for left carpal tunnel syndrome is denied.
5. Defendants shall pay the costs of this action.
This the __ day of August 2006.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER